IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| ROBERT CRAFT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case. No. 23-1081-JAR-GEB |
| | ) | |
| JACOB TOWNSEND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Jacob Townsend, John Linneman, Teresa Glendening, Hazel Peterson and Joel Hrabe ("Defendants") submit this memorandum in support of their motion under Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants respectfully request that this motion be granted and this action be dismissed. Defendants submit five new exhibits and state the following in support.

### INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Letter of Counseling from Townsend to Craft on March 31, 2023 |
| B | Notice of Intent to Bring Suit from Craft to Townsend on April 5, 2023 |
| C | Dismissal Letter from Peterson to Craft on April 10, 2023 |

### NATURE OF THE CASE

Plaintiff Robert Craft, a former Kansas Department of Corrections (KDOC) Officer at Norton Correctional Facility (NCF), between November 28, 2022 and April 10, 2023 (Doc. 1 at 5, 7, 10), alleges that during his initial probationary period of employment, he was summarily dismissed because of his communications attempting conflict resolution with other employees, which he claims were an exercise of free speech and religiously motivated. (Doc 1 at 7-14.)

Craft filed this lawsuit on May 9, 2023, suing defendants in their official capacities. (Doc. 1 at 1-3). He appears to allege, presumably under 42 U.S.C. § 1983, that defendants have

violated his rights to free speech and free exercise of religion under the First Amendment and to due process with regard to his employment under the Fifth Amendment. (Doc. 1 at 4, 8-10, 14-18.) Craft also states he has a right to "Liberty of Contract" under the Fifth Amendment (a substantive due process claim) and that Defendants violated that right. (Doc. 1 at 14-18.) Craft further says Defendants have conspired to deprive him of rights, presumably under 42 U.S.C. § 1985. (Doc. 1 at 14-17.) Craft requests declaratory, injunctive, and monetary relief. (Doc. 1 at 17-19.)

The KDOC Defendants now file their Motion to Dismiss. Craft's claims for monetary and declaratory relief should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity. Any remaining claims should be dismissed for failure to state a claim. Craft's free speech retaliation claim should be dismissed due to his speech being pursuant to official duties and due to KDOC having a strong interest in preventing disruptions. Craft's free exercise retaliation claim should be dismissed because the policies in question were neutral, generally applicable, and rational. Craft's procedural due process claim should be dismissed for lack of a property interest. Craft's substantial due process claim should be dismissed due to not relying on good law. And Craft's conspiracy claim should be dismissed under the intra-corporate conspiracy doctrine.

## QUESTIONS PRESENTED

I. As a matter of law, does the Eleventh Amendment bar Craft's claims against Defendants in their official capacities for monetary and declaratory relief?

II. Does Craft's free speech retaliation claim fail when his speech was pursuant to official duties and when KDOC had a stronger interest in preventing disruptions?

III. Does Craft's free exercise retaliation claim fail when the policies in question were neutral, generally applicable, and rational?

2

IV. Are Defendants entitled to dismissal on Craft's procedural due process claim when he does not plausibly allege a property interest in his employment?

V. Are Defendants entitled to dismissal on Craft's substantive due process claim when the legal basis for it has been overruled and is no longer good law?

VI. Does Craft's conspiracy claim fail under the intra-corporate conspiracy doctrine?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. McCoy, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although the sufficiency of a complaint generally rests on its contents alone, the court may also consider: (1) documents that the complaint incorporates by reference, (2) documents that the complaint references if they are central to the plaintiff's claims, and (3) documents of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). At the motion to dismiss stage, documents of which the court takes judicial notice "may only be

3

considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.* at 840-41.

**I.** **The Eleventh Amendment bars Craft's claims against Defendants in their official capacities for declaratory relief and for monetary damages.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.*; *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, Craft's statement that "[t]he Public and Plaintiff union shall be reconstituted" (Doc.

4

1 at 19) is unclear, as Craft has not defined "[t]he Public" and appears to use it interchangeably for different persons. But it is possible that Craft is requesting reinstatement of his employment with KDOC, which would be prospective injunctive relief exempt from Eleventh Amendment immunity. He requests declaratory relief in paragraph VI(48), which is barred. Although he refers to paragraph VI(49)(1) of his Complaint as "Coercive Remedy," he actually requests a "Declaration of Fact" and that Defendants be "declared incapacitated." (Doc. 1 at 19). Such declaratory relief is barred.[1] In paragraph VI(49)(2) of his Complaint, Craft attempts to request monetary relief when he demands "all previously deprived and currently due public treasury awards." (Doc. 1 at 19) But monetary damages are barred. Therefore, Craft's claims against Defendants in their official capacities for declaratory and monetary relief should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

## II. Craft fails to state a claim for retaliation for free speech because his speech was pursuant to official duties and KDOC had a strong interest in preventing disruptions.

When analyzing First Amendment retaliation claims brought by public employees against their employers, courts apply the five-part *Garcetti/Pickering* test. *Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). To prevail, a plaintiff must show all five of the following elements:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action;

---

[1] Alternatively, if this paragraph is interpreted as injunctive relief, Craft has not cited authority that grants the Court power to remove (or otherwise "incapacitate") these executive branch officials, so he would lack standing due to lack of redressability with regard to this requested remedy. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought").

and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* "The first three elements concern whether the speech is protected, and are issues of law for the court to decide." *See id.* at 911. Here, Craft fails to meet at least the first and third elements.

### A. Craft fails to meet the first element since his speech was made pursuant to his official duties and he attempts to constitutionalize his grievances.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Complaints to other employees such as coworkers or supervisors about staff-related issues that affect job duties are considered to be made pursuant to official duties. *Rohrburgh v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 748 (10th Cir. 2010). In *Garcetti,* a deputy district attorney's unprompted memorandum to his supervisor suggesting that an affidavit used to obtain a search warrant contained misrepresentations was not protected speech. *Garcetii*, 547 U.S. at 414, 422. *Garcetti* held that the First Amendment does not empower employees "to constitutionalize the employee grievance." *Rohrburgh*, 596 F.3d at 745 (quoting *Garcetti*, 547 U.S. at 420).

Here, Craft asserts that on March 10, 2023, he addressed another corrections officer verbally and by email regarding conduct toward himself and inmates that Craft found offensive. (Doc. 1 at 7.) On March 14, 2023, he emailed Defendants Townsend and Linneman a summary of a meeting where they had advised him to handle conflicts with fellow employees differently. (Doc. 1 at 8.) On March 31, 2023, Defendant Townsend issued informal discipline in the form of a Letter of Counseling. (Doc. 1 at 9; Exhibit A.[2]) Even after receiving the Letter of Counseling,

---

[2] The Court can take judicial notice of the attached exhibits as documents the Complaint references that are central to the claims. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

Craft sent more communications regarding this conflict and threatened to bring suit. (Doc. 1 at 9-10; Exhibit B.) As in *Garcetti,* Craft is attempting to "constitutionalize the employee grievance" by claiming these instances were protected speech. Craft was a corrections officer (Exhibit C at 1), so his job duties included working in harmony with other employees to supervise inmates. His speech was made pursuant to his official duties because he complained to other employees about staff-related issues affecting staff relationships and supervision of inmates.

> **B. KDOC has an interest in avoiding disruption that outweighs Craft's free speech interests and has wide discretion and control over the management of its personnel and internal affairs.**

"Although the third element must weigh in favor of the plaintiff for the plaintiff to prevail on the First Amendment claim, the employer bears the burden on the third element." *Duda*, 7 F.4th at 912. "[T]he only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, by the speech itself, of the public employer's internal operations and employment relationships." *Id.* (emphasis omitted). This interest includes promoting effective and efficient fulfillment of employee responsibilities and maintaining proper discipline in public service. *Lane v. Franks*, 573 U.S. 228, 242 (2014). "This interest is particularly acute in the context of law enforcement, where there is a heightened interest in maintaining discipline and harmony among employees." *Duda*, 7 F.4th at 912.

> [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. . . . Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

*Connick v. Myers*, 461 U.S. 138, 151 (1983). "In performing the balancing, the [employee's] statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Brammer-Hoelter v. Twin*

7

*Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Relevant considerations include:

> whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Duda*, 7 F.4th at 912.

Here, firstly, the letter of dismissal does not state why Craft was dismissed or whether it had to do with the conduct Craft alleges was protected. (Doc. 1 at 10; Exhibit C.) But assuming, as Craft's Complaint does, that the dismissal was for the pattern of conduct earlier discussed in the Letter of Counseling regarding Craft's manner of "managing controversies and conflicts" (Doc. 1 at 11), then he would have been dismissed for violating IMPP 02-118D,[3] which set standards of behavior for interactions with other KDOC employees, and for violating a post order that stated: "Any problems with other officers or any other employee shall be documented and reported to the shift supervisor as applicable." (Exhibit A.) Contrary to these policies, Craft sent "long narrative emails" to individuals he had a conflict with in a manner considered "belittling, disrespectful, and unprofessional" by KDOC, and which escalated conflict in the view of KDOC. (Exhibit A at 2.) Even after receiving the Letter of Counseling, Craft sent more communications regarding this conflict and threatened to bring suit. (Doc. 1 at 9-10.)

Craft was employed as a corrections officer (Exhibit C at 1), and corrections officers employed by the KDOC are law enforcement officers.[4] So KDOC had not just a legitimate

---

[3] Internal Management Policy & Procedure (IMPP) 02-118D, Human Resources: Employee and Volunteer Rules of Conduct and Undue Familiarity (Mar. 29, 2018), https://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-2/02-118d/view. The Court can take judicial notice of public IMPP's – which can be found on KDOC's website – under Federal Rule of Evidence 201. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).
[4] *Martin v. Kansas*, 190 F.3d 1120, 1123 n.1 (10th Cir. 1999) (citing K.S.A. 22-2202 and K.S.A.

8

interest, but a heightened interest, in promoting effective and efficient operations and discipline in public service, in promoting discipline and harmony among employees, and in avoiding disruptions to internal operations and employment relationships. All of these reasons support the policy restrictions cited on how employees handle conflicts, as the restrictions channel employee concerns to an appropriate place and in an appropriate manner. Craft's conflict resolution attempts not only violated KDOC policy, they could reasonably be considered by KDOC to be disruptive, to impair discipline by superiors or harmony among co-workers, and to have a detrimental impact on close working relationships for which personal loyalty and confidence are necessary. So KDOC's interests as employer outweighed Craft's speech.

Craft fails to meet the first and third elements for a claim alleging retaliation due to exercise of free speech, so this claim should be dismissed for failure to state a claim.

### III. Defendants are entitled to dismissal of Craft's Free Exercise claim because the policies he complains of were neutral, generally applicable, and rational.

Craft asserts that Defendants interfered with his First Amendment rights to free exercise of his religion by retaliating against him based on his religiously motivated conduct. (Doc. 1 at 4, 11-12, 14-17); *see also Creusere v. Bd. of Educ.*, 88 F. App'x 813, 822 (6th Cir. 2003) (interpreting a claim of retaliation for religious conduct as a claim of interference with free exercise).[5] Laws or policies "incidentally burdening religion are ordinarily not subject to strict

---

75-5247a), *overruled on other grounds by Bd. of Trs. v. Garrett*, 531 U.S. 356 (2001) *as recognized in Rivero v. Bd. of Regents*, 950 F.3d 754, 760 (10th Cir. 2020).

[5] To show "constitutionally protected conduct" as required for First Amendment retaliation claims more generally, *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022), the conduct must be constitutionally protected from interference. *See Casias v. City of Pueblo*, No. 20-CV-02545, 2022 WL 952876, at *4 (D. Colo. Mar. 30, 2022), *recommendation adopted by* 2022 WL 20044260 (D. Colo. Apr. 21, 2022). So when an alleged retaliatory action was pursuant to a law or policy, a retaliation claim and interference claim under the Free Exercise clause are identical. Both allege deprivation of rights through the law or policy.

scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021) (discussing a city policy). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 1877. Government fails to act in a generally applicable manner when it "decides the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993). When a law is neutral and generally applicable, rational-basis deference applies, under which the question becomes whether the law "rationally relates to a legitimate government interest." *Harmon v. City of Norman*, 61 F.4th 779, 794 (10th Cir. 2023).

Further, "[t]he mere assertion of generic religious objections is not sufficient to invoke first amendment protections." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989). A plaintiff must provide more than a "a conclusory allegation of religious exemption" by providing "specific allegations" about a "specific belief" that requires or forbids certain conduct. *See id.* at 1198. A plaintiff must also "plead sufficient factual matter to show that [the defendants] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).[6]

Here, as discussed in the previous section, Craft was disciplined for violating policies meant to channel employee concerns to an appropriate place and in an appropriate manner, and Craft's complaint assumes that this was the reason he was dismissed. The policies are neutral and generally applicable standards, limiting non-religious and religious conduct alike, so rational

---

[6] Alternatively, a plaintiff must allege "conscious and intentional interference." *See Ralston v. Cannon*, No. 19-1146, 2021 WL 3478634, at *5 to *6 (10th Cir. 2021) (citing *Ralston v. Cannon*, 884 F.3d 1060, 1063 n.3 (10th Cir. 2018)).

10

basis review applies. As also discussed in the previous section, KDOC, as a law enforcement employer, had a heightened interest in promoting effective and efficient operations and discipline in public service, in promoting discipline and harmony among employees, and in avoiding disruptions to internal operations and employment relationships. All these reasons support the policies' restrictions on how employees handle conflicts, channeling employee concerns to an appropriate place and in an appropriate manner. This provides a rational basis for the policies.

Alternatively, Craft fails to provide specific allegations regarding specific religious beliefs that require or prohibit certain conduct. He asserts beliefs regarding "managing controversies and conflicts," apparently alleging that any of his conduct in the category of conflict resolution cannot be constitutionally regulated by his employer. (Doc. 1 at 11.) He cites without explanation the golden rule ("do to others as you would have them do to you") and a generic concept of justice ("render therefore to all their due"). (Doc. 1 at 12.) He does not explain why his religious beliefs prohibited him from channeling his concerns to his supervisor in the required manner. Craft also does not allege sufficient factual matter to show that Defendants adopted and implemented the policies not for a neutral reason but for the purpose of discriminating on account of religion.

For the above reasons, Craft fails to state a Free Exercise claim.

**IV.     Defendants are entitled to dismissal on Craft's procedural due process claim because Craft has failed to plausibly allege a property interest in his employment.**

Procedural due process claims require that: (1) the individual possessed a protected interest; and (2) the individual was not afforded an appropriate level of process. *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). A public employee is entitled to procedural due process only if he can establish that he was deprived of a protected property interest in his employment, which must be established by state law. *Crowley v. City of Burlingame*, 352 F.

11

Supp. 2d 1176, 1181 (D. Kan. 2005) (citing *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994)). "Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Snyder v. City of Moab*, 354 F.3d 1179, 1189 (10th Cir. 2003).

In Kansas, "[a]n extensive network of statutes and administrative regulations governs employment in the classified service." *Bruce v. Kelly*, 316 Kan. 218, 226 (2022) (citing the Kansas Civil Service Act (KCSA), K.S.A. 75-2935(2)). "Those persons appointed to the classified service must first serve a probationary period, during which their employment *may be terminated at will*." *Id.* (emphasis added) (citing K.S.A. 75-2946 and K.A.R. 1-7-3). "Probationary periods last 6 months, during which time the employee's supervisors evaluate the employee to determine whether to keep the employee permanently." *Matthews v. State*, No. 76,802, 1997 WL 35436262, at *1 (Kan. Ct. App. Nov. 14, 1997) (citing K.A.R. 1-7-4). Only if the employee achieves the status of a "permanent classified employee" do protections from adverse action without "valid cause" apply. *Bruce*, 316 Kan. at 226 (citing K.S.A. 75-2949).

Here, Craft does not contest that he was a probationary employee. (*See* Doc. 1 at 13.) He does not allege that he achieved the status of a permanent classified employee. And he does not even allege that he worked at KDOC for more than the probationary period of six months. (*See* Doc. 1 at 5, 10 (alleging he worked at KDOC from Nov. 28, 2022, to Apr. 10, 2023).) Rather, he alleges that he had a protected property interest in his *probationary* employment. (Doc. 1 at 13 ("even on Probation").) He points to a regulation that addresses when the director of personnel services in the Kansas Department of Administration can dismiss a probationary employee for defects in the hiring process under the Kansas Civil Service Act (KCSA). (Doc. 1 at 13 (citing

12

K.A.R. 1-7-7).)[7] But Craft does not allege that this director dismissed him from employment or that he was dismissed for defects in the hiring process under the KCSA.

Craft also cites a KDOC policy, IMPP 02-120D, which states:

> To ensure each employee's right to due process and the application of discipline in a consistent and fair manner, supervisors shall apply a program of progressive counseling and discipline, with emphasis on correcting employee behavior or performance. . . . Prior to being subjected to any formal disciplinary action, *an employee with permanent status or probationary status due to promotion* shall be afforded an opportunity to meet with the appointing authority or designee to present any verbal or written information or material relevant to the situation.[8]

First, the portion of the policy requiring "an opportunity to meet with the appointing authority or designee" only applies to "an employee with permanent status or probationary status due to promotion." Employees with probationary status due to starting a new position after a promotion have statutory protections in K.S.A. 75-2944(b). Craft does not allege that he was a permanent employee or was on probationary status due to a promotion, so that portion of the policy does not apply. Second, "a program of progressive counseling and discipline, with emphasis on correcting employee behavior or performance," was followed, as is evidenced by the March 12, 2023, meeting Townsend and Linneman had with Craft (Doc. 1 at 8) and the Letter of Counseling that Craft received prior to his dismissal. (Doc. 1 at 9; Exhibit A.)

Therefore, Craft has failed to establish the first element of the two-step inquiry, that he

---

[7] K.A.R. 1-7-7 requires notice and an opportunity to comment "if *the director* finds that the employee was appointed as a result of a violation of the provisions of *the act* or these regulations." The "act" is the KCSA. The regulation implements K.S.A. 75-2943 and 75-2946, which are part of the KCSA. *See* K.S.A. 75-2961 (defining the sections included in the KCSA). The KCSA defines "director" as "the director of personnel services" in the Department of Administration. K.S.A. 75-2926(b). Hiring defects would be important for the director to address because K.S.A. 75-2935(2) requires classified employees to be hired under KCSA procedures.
[8] IMPP 02-120D, Human Resources: Employee Disciplinary Procedures and Informal/Formal Actions, 1 (May 7, 2015), https://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-2/02-120d/view.

13

had a property interest, and his due process claim should be dismissed for failure to state a claim.

V.  **Defendants are entitled to dismissal on Craft's substantive due process claim because old cases that held that "liberty of contract" is protected by the Constitution are no longer good law.**

In the long-since-overruled case *Lochner v. New York*, 198 U.S. 45, 64 (1905), *overruled by Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963), the Supreme Court held that "the freedom of master and employee to contract with each other in relation to their employment, and in defining the same, cannot be prohibited or interfered with, without violating the Federal Constitution." But "[t]he doctrine that prevailed in *Lochner* . . . and like cases . . . has long since been discarded." *Ferguson*, 372 U.S. at 730. More specifically, the idea that substantive due process under the Fifth Amendment or Fourteenth Amendment protects the right to contract "belongs to an earlier, now discredited doctrinal era, and it is no longer good law." *E. Enters. v. Chater*, 110 F.3d 150, 158-59 (1st Cir. 1997), *overruled on other grounds by E. Enters. v. Apfel*, 524 U.S. 498, 537-38 (1998) (saying "this Court has expressed concerns about using the Due Process Clause to invalidate economic legislation" although ruling on alternative grounds). Even under *Lochner*, the freedom protected was the freedom "to *enter* into any contract," *Lochner*, 198 U.S. at 62 (emphasis added), which did not create a *breach-of-contract* claim under the Constitution. So Craft fails to state a claim that his liberty of contract was unconstitutionally interfered with.

VI.  **Craft's conspiracy claim fails under the intra-corporate conspiracy doctrine.**

Under the intra-corporate conspiracy doctrine, a "governmental body cannot conspire with itself." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (quoting *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985)). Defendants are part of the same governmental body and are sued in their official capacities, so they legally cannot conspire with each other. Craft fails to state a conspiracy claim.

14

Alternatively, Craft does not state a claim under § 1985. Craft does not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that an obstruction of justice[9] occurred (*see* § 1985(2)), and as the Tenth Circuit has stated:

> To state a claim under § 1985(3), a plaintiff must show: (1) a conspiracy, motivated by racially-discriminatory animus; (2) to deprive plaintiff of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom.

*Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004) (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)). Here, no actual deprivation of rights occurred. Additionally, no racially-discriminatory animus is alleged.[10] Therefore, Craft fails to state a claim under § 1985.

For the above reasons, the Defendants request that the Court dismiss Craft's claims.

> Respectfully submitted,
>
> OFFICE OF ATTORNEY GENERAL
> KRIS W. KOBACH
>
> */s/ Matthew L. Shoger*
> Matthew L. Shoger, KS No. 28151
> Assistant Attorney General
> Milesha N. Segun, KS No. 28290
> Assistant Attorney General
> 120 SW 10th Avenue, 2nd Floor
> Topeka, Kansas 66612-1597
> matt.shoger@ag.ks.gov
> milesha.segun@ag.ks.gov
> (785) 296-2215
> Fax: (785) 291-3767
> *Attorneys for the Defendants*

---

[9] Obstruction of Justice, Black's Law Dictionary (11th ed. 2019) ("Interference with the orderly administration of law and justice, as by giving false information to or withholding evidence from a police officer or prosecutor, or by harming or intimidating a witness or juror.").

[10] Alternatively, although this section may cover other class-based animus, *see Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("there must be some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus" (emphasis added)); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("We have not yet had occasion to resolve the "perhaps"), Craft does not plausibly allege any class-based animus here.

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 14th day of June, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Robert Craft
209 N. Oak Street
Stockton, KS 67669
craft.kdoc@gmail.com
*Plaintiff, pro se*

                */s/ Matthew L. Shoger*
                Matthew L. Shoger
                Assistant Attorney General