IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT CRAFT,

     Plaintiff,

     v.                          Case No. 23-1081-JAR-GEB

JACOB TOWNSEND et al.,

     Defendants.

_____

## MEMORANDUM AND ORDER

Plaintiff Robert Craft, a former Kansas Department of Corrections ("KDOC") employee, filed this pro se action on May 9, 2023, alleging claims against several other KDOC employees arising out of his termination. Plaintiff paid the filing fee and summons was issued to Defendants—Jacob Townsend, John Linneman, Teresa Glendening, Hazel Peterson, and Joel Hrabe. Plaintiff filed several motions before the answer deadline that he indicated were "emergency" motions and suggested that because he had given Defendants notice of these filings, the Court should immediately rule. But the Court issued an Order on June 8, 2023, informing Plaintiff that it would not rule on these motions until it heard from Defendants, and directed Defendants to respond to them no later than seven days after filing their answers.

Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 16) and Emergency Motion for Order to Stay and Order to Disqualify Kansas Attorney General's Office and Writ of Injunction and Request for Hearing (Doc. 30) object to attorneys from the Kansas Attorney General's Office representing the individual Defendants in this matter, and ask the Court to disqualify them. These motions are fully briefed and the Court is prepared to rule. As explained more fully below, these motions are denied.

Instead of filing answers, Defendants timely filed a Motion to Dismiss (Doc. 19) under Fed. R. Civ. P. 12(b).[1] That motion is fully briefed and the Court is prepared to rule. As described below, Defendants' motion to dismiss is granted.

The Court's rulings render moot Plaintiff's remaining pending motions: Plaintiff's Motion for Emergency Provisional Remedy (Doc. 10), Request for Hearing on Plaintiff's Motion for Emergency Provisional Remedy (Doc. 15), Motion for More Definite Statement (Doc. 24), and Motion to Strike (Doc. 33).

## I.      Background

Plaintiff's Complaint for Declaratory and Coercive Relief ("Complaint") alleges claims against several KDOC employees, claiming they violated his federal and state constitutional rights in several ways when his KDOC employment was terminated. Plaintiff describes each Defendant's "Capacity" as follows: "in the official capacity of a sworn State of Kansas Department of Corrections Public Employee/Officer/Agent."[2]

The following facts are alleged in the Complaint and assumed to be true for purposes of deciding this motion. Plaintiff was hired by the KDOC on November 22, 2022 as a correctional officer at the Norton Correctional Facility ("NCF"). On March 10, 2023, Plaintiff addressed another officer about conduct that Plaintiff "considered aggressive and of poor conduct toward the Plaintiff and Inmates."[3] Plaintiff followed up his discussion with this officer by sending him an email with a "Statement of Position" regarding the conduct and "gave the Officer an opportunity to clarify or take responsibility for the concerning behavior."[4] The next day,

---

[1] A motion under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

[2] Doc. 1 at 1–3.

[3] Doc. 1 ¶ 16.

[4] *Id.* ¶ 18.

Townsend and Linneman summoned Plaintiff for a meeting where they advised him that he should "keep his mouth shut and not write anything down or pursue any complaints" about the prior day's incident.[5]  Plaintiff sent Townsend and Linneman a follow-up email summarizing their meeting, which was ignored.

On March 31, 2023, Townsend, who was Plaintiff's supervisor, gave Plaintiff a Letter of Counseling ("LOC").[6]  The LOC was sent up the chain of command to prison Administrator Glendenning and NCF Warden Peterson.  The LOC references the KDOC Internal Management Policies and Procedures ("IMPP") 02-118D, which governs "Employee and Volunteer Rules of Conduct and Undue Familiarity."[7]  This IMPP, in relevant part, requires employees to maintain a respective demeanor when dealing with other employees, and prohibiting "violent, threatening, disruptive, harassing, dishonest, unethical" behavior.[8]  The LOC also references Plaintiff's post Order at NCF, which states in part that "[a]ny problems with officers or any other employee shall be documented and reported to the shift supervisor as applicable."[9]

Plaintiff next served the Rooks County Sheriff's Office with a Notice to Bring Suit, in which he demanded that Townsend rescind the LOC and provide him with a written apology. The notice was ignored.  Plaintiff also sent an email to Peterson asking to meet and confer.  His email was ignored.

---

[5] *Id.* ¶ 20.

[6] If matters outside the pleadings are reviewed, the Court generally must convert a Rule 12(b)(6) motion to a Fed. R. Civ. P. 56 motion for summary judgment.  Fed. R. Civ. 12(d).  However, the Court may consider documents that are attached as exhibits to the complaint, or documents that are referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  Fed. R. Civ. P. 10(c); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).  Here, the LOC is both referenced in the Complaint and central to Plaintiff's claims challenging the constitutionality of his discipline. Plaintiff does not dispute the authenticity of this document that Defendants attached to their motion to dismiss.

[7] Doc. 20-1, at 1.

[8] *Id.*

[9] *Id.* at 2.

On April 10, 2023, Plaintiff was summoned to NCF by Glendenning.  When he arrived, Linneman and Glendenning served him with a Notice of Dismissal.  The Notice did not provide a reason for his termination.  Plaintiff turned in his KDOC identification and handcuffs and left the facility.

On April 14, 2023, Plaintiff drafted a Response to Dismissal letter, which he sent to the KDOC by mail, and which he emailed to Hrabe.  In this letter, Plaintiff stated that he had been following his religious principles with respect to conflict resolution, including that he could not "turn a blind eye to unethical or immoral behavior, especially on inmates who are not trained and cannot defend themselves."[10]

Between April 22, 2023 and April 28, 2023, Plaintiff contacted various KDOC offices and attempted to contest his termination.  Eventually, on April 28, he received a letter from Peterson explaining that because he was a probationary employee, under K.A.R. 1-7-3, he could be dismissed at any time without cause.

Plaintiff alleges that Defendants' conduct violated the United States and Kansas Constitutions.  Plaintiff asserts that Defendants violated his rights to free speech and free exercise of religion under the First Amendment and to due process with regard to his employment under the Fifth Amendment.  Plaintiff also states he has a right to "Liberty of Contract" under the Fifth Amendment and that Defendants violated that right.  Finally, Plaintiff alleges that Defendants conspired to deprive him of rights.  Plaintiff seeks "declaratory and coercive relief," including that "all previously deprived and currently due public treasury awards

---

[10] Doc. 1 ¶ 42.

and benefits shall be immediately dispursed [sic] until such time as they are no longer due under the color of law."[11]

## II.     Defendants' Representation

On May 26, 2023, Kansas Assistant Attorney General Matthew Lee Shoger entered his appearance for Defendants.[12]  Later that day, Plaintiff filed an "Objection," to this entry of appearance, arguing that because he has not sued the State of Kansas, the KDOC, or any other state agency, the Kansas Attorney General's Office should not be permitted to represent these Defendants.[13]  Plaintiff suggests that allowing that office to represent Defendants would be a conflict of interest and that the Attorney General's Office "should not choose a side during a controversy between an Individual Public Officer and other Individual Public Officers for which they have not been summoned."[14]  Plaintiff later filed a motion for injunctive relief, asking the Court to prohibit the Attorney General's Office from appearing in this matter on behalf of Defendants and sought a hearing on that motion.[15]

Plaintiff is simply wrong that attorneys from the Kansas Attorney General's Office improperly entered their appearances in this case on behalf of the individual Defendants. Plaintiff's Complaint plainly alleges constitutional claims against KDOC employees based on their conduct in the course and scope of their employment.  Under Kansas law, "[t]he attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in  . . . all federal courts, in which the state shall be interested or a party, and

---

[11] Doc. 1 at 1, 19 ¶ 49.

[12] Doc. 12. Assistant Attorney General Milesha N. Segun entered an appearance in this matter on behalf of Defendants on June 8, 2023.  Doc. 17.

[13] Doc. 14.

[14] *Id.* ¶ 23.

[15] Doc. 30.

shall, when so appearing, control the state's prosecution or defense."[16]  KDOC is a state agency, and is considered an arm of the State of Kansas.[17]  Moreover, a Kansas government entity must, at the request of an employee, "[p]rovide for the defense of any civil action or proceeding against such employee, in such employee's official or individual capacity or both, on account of an act or omission in the scope of such employee's employment as an employee of the governmental entity, except as provided in subsection (c)."[18]

Therefore, under Kansas law, the Attorney General's Office had a duty to represent the Defendants named in this matter if they asked for such representation—they are all State of Kansas employees and are named in either or both their official and individual capacities.  None of the exceptions for declining representation apply under K.S.A. § 75-6108(c), and Plaintiff fails to put forth a cogent explanation, grounded in the law, for why the Attorney General would be required to investigate his constitutional claims such that a conflict of interest would arise. Plaintiff's motions seeking to disqualify defense counsel, including his request to stay this Court's resolution of the motion to dismiss, are therefore denied.

## III.    Motion to Dismiss

### A.    Legal Standards

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants first move to dismiss this case based on Eleventh Amendment immunity.  When a defendant raises Eleventh Amendment immunity in a motion to dismiss, it implicates this Court's subject matter jurisdiction and, thus, arises under Fed. R. Civ. P. 12(b)(1).[19]  Federal

---

[16] 2023 Kan. Laws Ch. 94 (S.B. 174), to be codified at K.S.A. § 75-702(a).

[17] *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012).

[18] K.S.A. § 75-6108(a)(1).

[19] *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942–44 (10th Cir. 2008).

courts are courts of limited jurisdiction and must therefore have a statutory or constitutional basis for exercising jurisdiction.[20]  The party seeking to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is proper,[21] and mere conclusory allegations of jurisdiction are not enough.[22]

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[23]  "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[24]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[25]  Because Plaintiff proceeds pro se, the Court is mindful that it must construe his pleadings liberally and apply a less stringent standard than it applies to attorneys.[26]

**B.  Plaintiff's Claims**

Plaintiff brings claims against the named Defendants for violating his federal and state constitutional rights.  42 U.S.C. § 1983 provides "a private right of action against any person who, under color of state law, deprives another individual of 'any rights, privileges or immunities secured by the Constitution and laws.'"[27]  While § 1983 expressly authorizes a

---

[20] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[21] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[22] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[23] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[24] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[26] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[27] *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1121–22 (10th Cir. 2009) (quoting 42 U.S.C. § 1983).

private right of action for state deprivations of federal rights, "[a]n alleged violation of a state constitution cannot form the basis of a § 1983 claim.  That section provides remedies only for deprivation of rights secured by the United States Constitution."[28]

The parties dispute whether Plaintiff's federal claims are asserted against Defendants in their official or individual capacities.  Defendants point to the language in the section of the Complaint listing the parties, where Plaintiff indicates they are being sued in their official capacities.  Defendants argue, based on this language, that Plaintiff brings claims against them in their official capacities only.  Plaintiff disputes this characterization, primarily relying on arguments about service.  According to Plaintiff, because he did not serve the State itself, or the KDOC, the Court should construe his claims as against Defendants in their individual capacities only.

Whether Plaintiff has sued Defendants in their official or individual capacities does not turn on service.  Where "the complaint fails to specify the capacity in which the government official is sued," the Court looks to "the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability."[29]  Here, the Complaint does specify the capacity in which each Defendant is sued—it states that each Defendant is sued "in the official capacity of a sworn State of Kansas Department of Corrections Public Employee/Officer/Agent."[30]  Nonetheless, the Court proceeds to consider "the substance

---

[28] *Jackson v. City of Overland Park*, No. 11-2527-CM-DJW, 2012 WL 1231848, at *6 (D. Kan. Apr. 11, 2012).  Although Plaintiff does not cite § 1983 in the Complaint, he does not need to.  *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").

[29] *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993).

[30] Doc. 1 at 1–3.

of the pleadings and the course of the proceedings" in order to determine whether the suit is for individual or official liability.[31]

The Court liberally construes Plaintiff's Complaint as asserting claims against the individual Defendants in both their individual and official capacities.  There are clear signs in the Complaint that Plaintiff is asserting official-capacity claims.  First, the language in the Complaint explicitly states that he is suing Defendants in their official capacities.  Second, Plaintiff appears to seek declaratory and injunctive relief, as well as money damages from the State, given his request that "[t]he Public and Plaintiff union shall be reconstituted, and all previously deprived and currently due public treasury awards and benefits shall be immediately dispursed [sic]."[32]  "Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief."[33]  Third, Plaintiff refers to Defendants both by name and by their official titles.  Out of an abundance of caution, the Court construes the Complaint as also asserting individual-capacity claims given Plaintiff's insistence that this was his intention, and given that Defendants address the merits of those claims in their motion to dismiss.

The Court therefore construes the Complaint as alleging the following claims against Defendants in their individual and official capacities under 42 U.S.C. § 1983: (1) retaliation for exercising First Amendment free speech rights; (2) violation of First Amendment right to the free exercise of religion; (3) procedural due process violation under the Fourteenth Amendment;[34] (4)

---

[31] *Pride*, 997 F.2d at 715.

[32] Doc. 1 at 19.

[33] *Chilcoat v. San Juan County*, 41 F.4th 1196, 1214 (10th Cir. 2022) (citing *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011)), *cert. denied*, 143 S. Ct. 1748 (2023).

[34] The Fifth Amendment's Due Process Clause only applies to actions by the federal government.  *See, e.g.*, *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013).  Due process claims against state actors must proceed under the Fourteenth Amendment.  *Id.*  Plaintiff does not sue any federal actors, so his due process claims must be brought under the Fourteenth Amendment.

substantive due process violation under the Fourteenth Amendment; and (5) conspiracy. Plaintiff also alleges violations of the Kansas Constitution on the same grounds.

### C.    Eleventh Amendment Immunity

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent."[35]  The principle of sovereign immunity, which is confirmed by the Eleventh Amendment, provides that states and state agencies are generally immune from suit.[36]  When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding states from suit.[37]  Sovereign immunity does not apply when a state waives its immunity, and in some circumstances Congress may abrogate states' sovereign immunity by appropriate legislation.[38]  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."[39]  A valid waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."[40]  Similarly, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'"[41]

Pleading a claim against a government agent "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[42]  Here, the KDOC—Defendants' agency—"is an agency or department of the State of Kansas."[43]  Therefore, "any

[35] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

[36] *Id.* (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

[37] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[38] *Va. Off. for Prot. & Advoc.*, 563 U.S. at 253–54 (citations omitted).

[39] *Id.* at 254.

[40] *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

[41] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 786 (1991)).

[42] *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

[43] *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (collecting cases).

decree by the district court ordering a KDOC official to satisfy the judgment would operate against the State's coffers and would 'be paid from public funds in the state treasury.'"[44] Because there has been no waiver or valid abrogation,[45] the Court lacks subject matter jurisdiction over Plaintiff's official-capacity claims against these Defendants.

An exception to Eleventh Amendment immunity is found in *Ex parte Young*, which allows prospective declaratory and injunctive relief for continuing violations of federal law by the State.[46]  To determine whether the *Ex parte Young* exception applies, this Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[47]  None of Plaintiff's claims in this case identify ongoing violations of federal law; rather, they identify prior, discrete incidents of alleged wrongdoing before, during, and immediately after Plaintiff's termination on April 10, 2023.[48]  "*Ex parte Young* 'may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past.'"[49]

Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's § 1983 claims against Defendants in their official capacities.  The Court proceeds to consider Defendants'

---

[44] *Id.* at 700 (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

[45] Plaintiff cites no authority for the proposition that Defendants accepting service of process in this matter constitutes a waiver of immunity.  In order to waive the State's sovereign immunity, the State must voluntarily invoke this Court's jurisdiction.  *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681 n.3 (1999)).  The State does not waive sovereign immunity when "it is involuntarily brought into federal court."  *Id.*

[46] 209 U.S. 123 (1908); *Chilcoat v. San Juan County*, 41 F.4th 1196, 1213–14 (10th Cir. 2022) (citations omitted), *cert. denied*, 143 S. Ct. 1748 (2023).

[47] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[48] *See Chilcoat*, 41 F.4th at 1215 (finding no prospective relief sought where the plaintiff used past tense throughout the complaint and the court could not draw a reasonable inference from the facts alleged that the plaintiff would be subject to future retaliatory actions).

[49] *Id.* (quoting *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

alternative basis for dismissal—failure to state a claim—as to the individual-capacity claims alleged in the Complaint.

### D.        Failure to State a Claim under 42 U.S.C. § 1983

Plaintiff wholly fails to address Defendants' motion to dismiss for failure to state a claim, instead spending his entire lengthy response disputing that his claims are made against Defendants in their official capacities by pointing the Court to his service efforts.[50]  As set forth below, even if Plaintiff's Complaint is construed as alleging individual-capacity claims, they must be dismissed for failure to state a claim upon which relief can be granted.

### 1.        First Amendment Free Speech Retaliation Claim

Plaintiff first claims that he was terminated for exercising his First Amendment free speech rights.  He claims that he was terminated for criticizing another officer orally and in writing, and for stating his position on the matter later with Townsend and Linneman.  It is true that the First Amendment "prevents state and local governments from 'condition[ing] public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'"[51]  The following five-part "*Garcetti/Pickering*" test applies to First Amendment retaliation claims brought by public employees:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have

---

[50] Despite his pro se status, Plaintiff is expected to familiarize himself with and follow this Court's local rules.  *See Smith v. Jones*, 606 F. App'x 899, 901 (10th Cir. 2015).  Under D. Kan. Rule 7.1(d)(3), a fifteen-page limit applies to responses to motions to dismiss absent the Court providing the filing party with leave to exceed that page limit.  Although Plaintiff exceeded this page limit by more than ten pages without seeking prior leave, the Court has considered it.

[51] *Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021) (alterations in original) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)).

> reached the same employment decision in the absence of the
> protected conduct.[52]

Plaintiff must prevail on all five elements in order to demonstrate a First Amendment retaliation claim.[53]

Under the first two elements of this test, the Court must determine whether Plaintiff "spoke as a citizen on a matter of public concern.  If the answer is no, [Plaintiff] has no First Amendment cause of action based on his or her employer's reaction to the speech."[54]  The Supreme Court has made clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[55]

Assuming as true the facts alleged in the Complaint, Plaintiff's speech involved correcting another officer orally and in writing for conduct that he found to be aggressive and inappropriate toward an inmate and toward himself, and defending that criticism to his superiors. The Court finds that this was speech made pursuant to his professional duties.  "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."[56]  Moreover, the Tenth Circuit has "held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, disputes over the term of employment, and

---

[52] *Id.* (quoting *Helget v. City of Hays*, 844 F.3d 1216, 1221 (10th Cir. 2017)).

[53] *Id.*

[54] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

[55] *Id.* at 421.

[56] *Id.* at 421–22.

workplace frustration."[57]  Here, Plaintiff's speech clearly related to internal issues and his opposition to being censured and ultimately terminated.  Accordingly, Defendants' motion to dismiss this claim for failure to state a claim is granted.

### 2.    First Amendment Free Exercise Claim

Next, Plaintiff alleges he was terminated in violation of the First Amendment because his March 10 criticism of the correctional officer was motivated by his religious beliefs.  Similar to the *Garcetti/Pickering* framework on free speech claim, Plaintiff bears the burden to show his free exercise rights were burdened by Defendants in order to prevail on this claim.[58]  Plaintiff can make this showing by demonstrating that Defendants "burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"[59]

Plaintiff fails to plausibly allege that his free exercise rights were burdened by his discipline or termination.  According to the Complaint, the first time Plaintiff invoked his religious beliefs to Defendants was in his Response to Dismissal letter, which was written on April 14, 2023, after his termination.  Therefore, there is no way that the disciplinary or termination decisions could have been based on statements made in that letter.

Moreover, the LOC explained that the basis for Plaintiff's discipline was his failure to maintain respectful behavior in the workplace when he criticized his coworker orally and in writing, and his failure to report it to his shift supervisor instead of addressing the other officer himself.  The LOC quotes from the IMPP that governs employee conduct, and Plaintiff's post Order.

---

[57] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007) (first citing *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996), then citing *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1233–34 (10th Cir. 1998), and then citing *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989)).

[58] *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022).

[59] *Id.* at 2422 (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879–81 (1990)).

A policy will not be considered neutral "if it 'discriminate[s] on its face,' or if a religious exercise is otherwise its 'object.'"[60]  And a policy is not generally applicable "if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'"[61]  The IMPP and post Order referenced in the LOC are neutral and generally-applicable policies.  They require that certain types and forms of communication be used between KDOC officials.  They also require that an employee bring a matter to address problems with fellow officers through a shift supervisor.  These policies neither explicitly nor implicitly target religious conduct.[62]  In sum, Plaintiff cannot state a claim for relief because he cannot show that he engaged in protected conduct, or that his discipline or termination could have been tied to his assertion of free exercise rights in the April 14 letter.

### 3.    Procedural Due Process Claim

Plaintiff next claims that he was denied due process when he was disciplined and terminated without being given a reason, and without a hearing.  In considering this claim, the Court must conduct a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"[63]  Defendants move to dismiss under the first prong because they claim that

---

[60] *Id.* (alteration in original) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993)).

[61] *Id.* (quoting *Fulton v. Philadelphia*, 593 U. S. –, 141 S. Ct. 1868, 1876–77 (2021)).

[62] *See Kosan v. Utah Dep't of Corr.*, 290 F. App'x 145, 150–51 (10th Cir. 2008) (finding no burden on corrections officer's right to free exercise of religion where letter of warning admonished her for violating various Department of Corrections policies, "including prohibitions against defaming administrators or staff, revealing confidential information, and discrediting UDOC or causing the public to lose confidence in UDOC" because those policies were religiously neutral and generally applicable).

[63] *Roberts v. Winder*, 16 F.4th 1367, 1376 (10th Cir. 2021) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).

Plaintiff did not have a protected property interest in his continued employment under Kansas law.  The Court agrees.

"[E]mployees have a protected property interest in their employment 'if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions.'"[64]  The Kansas Supreme Court has explained:

> An extensive network of statutes and administrative regulations governs employment in the classified service.  Appointments in the classified service are made "according to merit and fitness from eligible pools which so far as practicable shall be competitive."  Those persons appointed to the classified service must first serve a probationary period, during which their employment may be terminated at will.  Once an employee successfully completes the probationary period, that employee earns permanent status in the classified service.[65]

According to the Complaint, Plaintiff was first hired by the KDOC in November 2022.  Under K.A.R. 1-7-4, new hires are subject to a six-month probationary period.  Therefore, Plaintiff was still in his probationary period on April 10, 2023, when he was terminated.  Plaintiff acknowledges in the Complaint that Defendants cited to K.A.R. 1-7-4 as the basis for his termination in a letter to him dated April 28, 2023, yet he proceeds to complain that the letter does not provide a cause for his termination, or provide him with due process.

Plaintiff appears to misunderstand his rights as a probationary employee.  As explained by the Kansas Supreme Court, new hires like Plaintiff must serve a probationary period during which they are at-will employees.[66]  An at-will employee serves "at the pleasure of their appointing authority" and "ha[s] no property interest in continued employment."[67]  Therefore,

---

[64] *Id.* (quoting *Potts v. Davis County*, 551 F.3d 1188, 1192 (10th Cir. 2009)).

[65] *Bruce v. Kelly*, 514 P.3d 1007, 1013 (Kan. 2022) (quoting K.S.A. § 75-2935(2)) (citations omitted).

[66] *Id.*

[67] *Id.* at 10, 14.

Defendants were not required to provide Plaintiff with cause for his termination, nor were they required to abide by the due process requirements that apply to permanent State employees.[68] Plaintiff's procedural due process claim is therefore dismissed.

### 4.        Substantive Due Process Claim

Plaintiff alleges that Defendants violated his right to "liberty of contract" under the Fifth Amendment, which the Court liberally construes as a claim for violation of his substantive due process rights under the Fourteenth Amendment.  "Substantive due process protects fundamental liberty interests and protects against the exercise of government authority that 'shocks the conscience.'"[69]  Here, as described above, Plaintiff has no claim of entitlement to continued employment because he was in a probationary status at the time of his discipline and termination. Plaintiff's claim of a substantive due process violation "is no greater than the right to procedural due process."[70]

Moreover, the Tenth Circuit has explained that,

> [i]n the employment context, liberty interests involve: "1) the protection of [the employee's] good name, reputation, honor, and integrity, and 2) [the employee's] freedom to take advantage of other employment opportunities."  In order to support a claim for violation of his liberty interests, [the employee] must show that the defendants made statements that: (1) impugned his "good name, reputation, honor, or integrity;" (2) were false; (3) occurred in the course of his termination; and (4) were published.[71]

---

[68] *See* K.S.A. § 75-2949 (setting forth procedures that apply to permanent employees).

[69] *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013) (citing *Seegmiller v. LaVerkin City,* 528 F.3d 762, 767 (10th Cir. 2008)).

[70] *Weathers v. W. Yuma Cnty. Sch. Dist. R-J-1*, 530 F.2d 1335, 1341 (10th Cir. 1976) (quoting *Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 4 (10th Cir. 1974)).

[71] *Parker v. Town of Chelsea*, 275 F. App'x 769, 773 (10th Cir. 2008) (first and second alterations in original) (first quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988); and then quoting *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)).

Plaintiff claims he has a "right to liberty of contract."  But he does not assert that his reputation was harmed by Defendants' conduct, or that Defendants published false information that impugned his good name when he was terminated.  Nor does he allege facts that would allow the Court to infer that Plaintiff lacks the freedom to take advantage of other employment opportunities.  Therefore, the Court grants Defendants' motion to dismiss this claim.

### 5.     Conspiracy

"A conspiracy claim under § 1983 requires the allegation of 'specific facts showing an agreement and concerted action among the defendants.'"[72]  Plaintiff must also "allege facts showing an actual deprivation of a constitutional right."[73]  "This is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy."[74]

As described in the Court's analysis of the First Amendment and due process claims alleged above, Plaintiff fails to adequately allege a deprivation of his constitutional rights. Because he fails to allege a deprivation of a constitutional right, he cannot adequately allege a conspiracy claim.  Thus, the Court must also dismiss Plaintiff's conspiracy claim.

### E.     Remaining State Law Claims

The Court has dismissed all of Plaintiff's federal claims—the only claims in this action over which the Court has original jurisdiction.  Plaintiff's remaining claims arise under Kansas law.  The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims.[75]  Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and

---

[72] *Maier v. Kansas*, No. 16-3219-SAC-DJW, 2017 WL 552629, at *3 (D. Kan. Feb. 10, 2017) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 544 (10th Cir. 1998)).

[73] *Id.* (citing *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995)).

[74] *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (citation omitted).

[75] 28 U.S.C. § 1367(c)(3).

fairness to the litigants."[76]  Ordinarily, if no federal claims remain before trial, the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[77]  Because the Court finds that Plaintiff's federal claims are subject to dismissal, the Court exercises its discretion and declines to assert supplemental jurisdiction over any remaining state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Application for Temporary Restraining Order and Motion For Preliminary Injunction (Doc. 16) and Plaintiff's Emergency Motion for Order to Stay and Order to Disqualify Kansas Attorney General's Office and Writ of Injunction and Request for Hearing (Doc. 30) are **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 19) is **granted**.  Therefore, the Court **finds as moot** Plaintiff's Motion for Emergency Provisional Remedy (Doc. 10); Plaintiff's Request For Hearing on Plaintiff's Motion for Emergency Provisional Remedy (Doc. 15); Plaintiff's Motion for a More Definite Statement (Doc. 24); and Plaintiff's Motion to Strike (Doc. 33).  This case is hereby **dismissed without prejudice**.  To the extent Plaintiff alleges individual-capacity claims under 42 U.S.C. § 1983, those claims are dismissed **with prejudice**.

**IT IS SO ORDERED.**

Dated: August 21, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[76] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (citations omitted).

[77] *Id.*